# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3545

_____

United States of America

*Plaintiff - Appellee*

v.

Curtis J. Cotton

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: May 12, 2017
Filed: July 6, 2017

_____

Before RILEY, BEAM, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

While on supervised release following a prison term for his 2009 bank robbery conviction, Curtis Cotton was found to have violated the terms of his supervision by committing assault, in violation of Iowa Code section 708.1(2)(c). The district court[1]

_____

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

revoked Cotton's supervision and sentenced him to twenty-four months in prison. Cotton challenges the sufficiency of the government's evidence. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

Cotton was sentenced to sixty months imprisonment and three years supervised release after pleading guilty to bank robbery in 2009. He began his supervised release on September 16, 2015. Relevant to the present case, the supervised release included the following terms: (1) "The defendant shall not commit another federal, state or local crime"; and (2) "The defendant shall not possess a firearm, destructive device, or any other dangerous weapon." On November 10, 2015, Cotton's probation officer filed a petition alleging that Cotton violated these two mandatory conditions.

Around 1:55 a.m. on October 26, 2015, Ryan Storey exited the Horseshoe Casino in Council Bluffs, Iowa, with approximately $8000 in baccarat winnings. As Storey retrieved his overnight luggage from his truck in a hotel parking lot adjacent to the casino, an armed assailant ran toward Storey shouting "hold up," coming within five to ten feet of Storey and pointing a large silver handgun at him. Storey jumped back, shouted loudly, and ran into the hotel office. The assailant ran in the opposite direction. The encounter lasted 10 to 15 seconds.

Storey identified Cotton as the assailant. Cotton admitted that he was at the Horseshoe Casino that night and that he made contact with Storey while in the casino. Storey testified that while he played baccarat with several thousand dollars in chips in public view, Cotton lingered behind him and hung around asking questions. Storey testified that Cotton stood out to him because he was just "moseying around the casino," was lingering behind him, and was not gambling. Storey remembered conversing with Cotton at the casino.

Casino surveillance video shows that Cotton exited the casino with Bronson Birdow through the same door as Storey about 20 seconds ahead of him and got into a black Chevrolet Avalanche pickup truck waiting just outside the casino doors driven by a third unidentified individual. Storey walked past the truck carrying a pizza as he exited the casino. Casino parking lot video shows that the black truck containing Cotton followed Storey at a distance with its lights off as Storey walked to his vehicle. The same black truck is seen on the video following Storey's vehicle leaving the casino parking lot. Storey made the very short drive to the Country Inn and Suites adjacent to the casino. The "hold up" incident occurred after Storey checked in at the hotel desk and returned to his vehicle in the hotel parking lot to retrieve his overnight luggage.

Storey testified that he recognized Cotton as the assailant because of his eyes, voice, short stature, gait, and clothes—which he remembered from their interaction and his observations of Cotton earlier at the casino. Cotton claims that he went straight home from the casino, but called no witnesses to support that assertion.

The district court found "by the greater weight of the evidence" that Cotton pointed a handgun at Storey in the parking lot that night, committing assault in violation of Iowa state law. The district court, therefore, found Cotton guilty of both violations since he broke an Iowa law and possessed a firearm. The district court sentenced Cotton to twenty-four months imprisonment followed by an additional year of supervised release.

Cotton appeals the district court's revocation of his supervised release and its finding that he violated the terms and conditions of his supervised release, but not the sentence imposed.

## II. Analysis

"We review for clear error the district court's factual findings as to whether a violation occurred." United States v. Ralph, 480 F.3d 888, 890 (8th Cir. 2007). "Clear error exists where, viewing the record as a whole, we are left with the definite and firm conviction that a mistake has been committed." United States v. Finley, 612 F.3d 998, 1002 (8th Cir. 2010) (internal quotation marks omitted).

Iowa Code section 708.1(2)(c) says, "A person commits an assault when, without justification, the person . . . [i]ntentionally points any firearm toward another, or displays in a threatening manner any dangerous weapon toward another."

Here, the district court found that "Curtis Cotton approached Ryan Storey . . . [and] pointed a handgun at him in the parking lot," committing "assault under Iowa Code § 708.1(2)(c)."

We do not find clear error in the district court's factual findings because there is ample evidence to support these findings. Specifically, this evidence included:

(1) Storey's testimony that Cotton was present at the casino, "moseying around" without gambling, and lingering around and behind Storey as Storey gambled at the baccarat table with several thousand dollars of casino chips visible, giving Cotton a motive to later approach Storey in the hotel parking lot with a gun;

(2) Storey's testimony, supported by video, showing that he had ample opportunity to observe Cotton and to later identify him based upon his size, clothing, eyes, voice, and other physical characteristics;

(3) Casino video confirming that Cotton exited the casino almost simultaneously with Storey and that he got into a black truck that stealthily followed Storey as he walked to his vehicle in the casino

parking lot, and the same black truck followed Storey's vehicle while exiting the parking lot;

(4) Storey's identification of Cotton as the assailant with "ninety-five percent certain[ty]," based upon the characteristics he observed in the casino including Cotton's eyes, clothing, size, voice, and other features;

(5) Parking lot video corroborating Storey's testimony about the "hold up" regarding the nature of the attack including approach and retreat of the attacker and the duration of the attack; and

(6) Storey's testimony that Cotton pointed a gun at him during the "hold up" encounter saying the gun was "staring him in the chest" and that he feared for his life.

Bolstering the above evidence is the fact that the district court found Storey to be a "very credible witness throughout the entire proceedings," and Storey was extensively cross-examined by Cotton's counsel. Credibility determinations by the district court based on testimony at supervised release revocation hearings "are virtually unreviewable on appeal." Ralph, 480 F.3d at 890 (internal quotation marks omitted).

In addition, Cotton did not dispute any of Storey's testimony other than that naming him as the assailant, and Cotton provided no evidence to support his claim that he went straight home from the casino, in spite of the fact that he got into a truck with two other potential witnesses who could have been called to corroborate his story. Therefore, based upon the evidence above, we find no clear error in the district court's finding that Cotton intentionally pointed a gun at Storey in the hotel parking lot.

Next, the district court found that Cotton violated two terms of his supervised release in pointing a gun at Storey. First, the district court found that Cotton committed a crime in violation of Iowa Code section 708.1(2)(c) violating the term of his release stating, "The defendant shall not commit another . . . state . . . crime."

-5-

Iowa Code section 708.1(2)(c) clearly defines "assault" as including "[i]ntentionally point[ing] any firearm toward another." Based upon the district court's factual finding above, the district court necessarily found that Cotton committed the state crime of assault and therefore violated a term of his supervision. Second, in finding that Cotton pointed a gun at Storey, the district court had to find that Cotton violated the term of his supervision that stated, "The defendant shall not possess a firearm," since Cotton obviously possessed the firearm he was brandishing.

### III. Conclusion

For the reasons stated above, we find that the district court did not clearly err in its factual determination that Cotton committed an Iowa crime in the parking lot of a hotel by pointing a gun at another thereby violating the terms of his supervised release.

Affirmed.

_____